IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MARCUS AVERY DUNCAN,**

        **Petitioner,**

   v.

**BRIAN BELLEQUE,**

        **Respondent.**

Civil No. 08-1080-BR

OPINION AND ORDER

**THOMAS J. HESTER**
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR  97204

    Attorney for Petitioner

**JOHN R. KROGER**
Attorney General
**KRISTEN E. BOYD**
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

    Attorneys for Respondent

1 - OPINION AND ORDER -

**BROWN, Judge.**

Petitioner, an inmate at the Oregon State Penitentiary, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court **DENIES** the Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner's daughter was born in 1990. In 1994, Petitioner split up with her mother and agreed to an informal custody arrangement under which the daughter and their two sons stayed with Petitioner during the school year and spent summers with their mother. In July 2001, while at the home of her mother in California for the summer, Petitioner's daughter disclosed to her babysitter and to her mother instances of abuse. The victim's mother repeated the allegations to the police, who conducted a video-taped interview of the daughter.

On October 9, 2001, a Linn County grand jury indicted Petitioner on two counts of Sexual Abuse in the First Degree. Count I alleged Sexual Abuse in the First Degree based upon forcible compulsion and Count II alleged Sexual Abuse in the First Degree based upon a victim under the age of 14. Petitioner waived his right to trial by jury, and the case proceeded to a bench trial on August 29, 2002.

2 - OPINION AND ORDER -

At trial, Petitioner's then 11-year old daughter testified that during 2001 Petitioner forced her to touch Petitioner's penis. Specifically, she described an incident that occurred while Petitioner was lying on a hide-a-bed in his underwear, under the covers in the living room. The daughter asked him to make her something to eat. After responding that he was feeling too sick, Petitioner told her "If you rub my stomach I'll get you something to eat." Resp. Exh. 103, p. 53-56. His daughter agreed and lay down next to him and rubbed his stomach. She testified that Petitioner then took her hand and forced it down to his penis. Keeping his hand on top of her hand, he forced her to rub his penis. The victim was uncomfortable and after some period of time she made an excuse that she had to go to the bathroom and left the room. She testified that Petitioner told her, "Don't tell anybody." Resp. Exh. 103, p. 59.

Through the testimony of investigating officers Detective James Voight and Sally Jo Knight, the state presented evidence regarding Petitioner's version of events. When first confronted by the police about his daughter's allegations, Petitioner denied she had touched his penis and denied that he even had a hide-a-bed. After further discussion, Petitioner then acknowledged that he had a hide-a-bed and that there was an incident with his daughter while he was sick with pneumonia. Petitioner also acknowledged he took his daughter's hand and put it onto his

3 - OPINION AND ORDER -

penis, and he admitted to Detective Voight that he received sexual pleasure from the contact.

After the state rested, the trial judge and parties engaged in the following colloquy:

> PROSECUTOR:  . . .  I have nothing further.  The State rests.
>
> THE COURT:  All right.
> Mr. Poole, any motions at this time?
>
> DEFENSE COUNSEL:  Right now, your Honor, if I could take a break.  We want to talk about witnesses that we may or may not call and if [Petitioner] wants to testify or not.
>
> THE COURT:  All right.  I think that's a valid request under the circumstances because you didn't know exactly what the State's case was going to be till right this minute.  How much are you asking for, Mr. Poole?
>
> DEFENSE COUNSEL:  I'd like a full break, if we could, ten or 15 minutes.
>
> THE COURT:  So why don't we just say we'll start at 2:30.
>
> DEFENSE COUNSEL:  That'd be fine. Thank you.
>
> (Recess taken.)
>
> -- chance to talk.  Based on our talk the defense would now rest.
>
> THE COURT:  And if you're going to do that let me talk to [Petitioner] for a second here.
> [Petitioner], I'm the trier of fact in this case but I'm still the Judge, so now I've got my Judge hat on, okay.  And the reason I have to talk to you, and your attorney's probably explained this to you a bit, I hope, is that you have a constitutional right to testify in this case.  You also have a constitutional right not to testify in this case, and so I have some duty to make sure that the decision you're making in this case not to

4 - OPINION AND ORDER -

testify is a knowing and voluntary decision that you're making on your own and this is what you want to do. And there is a specific - I guess before I ask you the question, of course, there's a specific instruction that we would read to the jury if we had a jury in this case, and let me find that. It says that "A defendant has an absolute constitutional right not to testify; therefore, a defendant's decision not to testify cannot be considered as an indication of guilty. It should not be commented upon or in any way considered by you in your deliberations," talking to the jury when they're deliberating. "A defendant also has an absolute constitutional right not to present any evidence; therefore, a defendant's decision not to present any evidence cannot be considered as an indication of guilt. It should not be commented upon or in any considered by you in your deliberations." So as to the first questions of - is it - do you feel it's a - that you have enough information to make an intelligent, valid decision at this point that you do not wish to testify?

PETITIONER: Yes, sir.

THE COURT: And then the second question about not calling - Mr. Poole just also indicated that he was going to rest his case. Are you comfortable with that decision, too? Your attorney's here to give you advice and represent you, but are you personally comfortable with that decision, also, at this time?
PETITIONER: Yes, sir.

Resp. Exh. 103, pp. 98-101.

    In closing argument, Petitioner's counsel argued that Petitioner did not knowingly force his daughter to touch his penis and that the daughter's testimony was not particularly credible. Counsel argued the victim's descriptions of the incident were not consistent; that based on other incidents she had described she had a "predisposition to think the worst" of what could have been an innocent touching; and, that her description of Petitioner's

5 - OPINION AND ORDER -

penis as soft, combined with Petitioner's pneumonia and Vicodin consumption, tended to reflect that any touching was not for the purpose of arousing sexual gratification, as required to prove a charge of Sexual Abuse in the First Degree.  Counsel also argued that one of the motivations for the victim to make these accusations against her father was so that she could stay in California with her mother.

After closing arguments, the trial judge took a brief recess, and upon his return to the bench, he discussed at some length how he reached his decision.  He ultimately found Petitioner guilty of one count of Sexual Abuse in the First Degree (Count II – victim under the age of 14) and not guilty on the remaining count of Sexual Abuse in the First Degree (Count I - forcible compulsion).  The judge sentenced Petitioner to 75 months of imprisonment pursuant to Measure 11.

Petitioner filed a direct appeal.  The Oregon Court of Appeals affirmed without opinion.  *State v. Duncan*, 193 Or. App. 823, 94 P.3d 913 (2004).  Petitioner did not seek review from the Oregon Supreme Court.

Petitioner then sought state post-conviction relief ("PCR").  Following an evidentiary hearing, the PCR trial judge denied relief.  Petitioner appealed, but the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied

6 - OPINION AND ORDER -

review. *Duncan v. Blacketter*, 219 Or. App. 180, 181 P.3d 790, *rev. denied*, 344 Or. 670, 189 P.3d 25 (2008).

On September 16, 2008, Petitioner filed his habeas corpus action in this Court. He alleges the following grounds for relief in his Petition for Writ of Habeas Corpus:

> **Ground One:** Petitioner was denied his right to the effective assistance of trial counsel Created by the Sixth and Fourteenth Amendment to the United States Constitution when trial counsel failed to investigate the case and prepare himself to the extent necessary in order to advise Petitioner in an informed manner. The post-conviction court erred when it excluded the testimony of Kathy Fitzwater.
> **Supporting Facts:** Petitioner's trial counsel failed to investigate or call witnesses at the trial of the petitioner.
>
> **Ground Two:** Petitioner was denied his right to the effective assistance of trial counsel Created by the Sixth and Fourteenth Amendment to the United States Constitution when trial counsel failed to investigate the case and prepare himself to the extent necessary in order to advise Petitioner in an informed manner. The post-conviction court erred when it excluded the testimony of Starrie Underwood.
> **Supporting Facts:** Petitioner's trial counsel failed to investigate or call witnesses at the trial of the petitioner.
>
> **Ground Three:** Petitioner was denied his right to the effective assistance of trial counsel Created by the Sixth and Fourteenth Amendment to the United States Constitution when trial counsel failed to investigate the case and prepare himself to the extent necessary in order to advise Petitioner in an informed manner. The post-conviction court erred when it excluded the testimony of Mark Dodge.
> **Supporting Facts:** Petitioner's trial counsel failed to investigate or call witnesses at the trial of the petitioner.

7 - OPINION AND ORDER -

> **Ground Four:** Petitioner was denied his right to the effective assistance of trial counsel Created by the Sixth and Fourteenth Amendment to the United States Constitution when trial counsel failed to investigate the case and prepare himself to the extent necessary in order to advise Petitioner in an informed manner. The post-conviction court erred when it excluded the testimony of Dianna Donofrio.
> **Supporting Facts:** Petitioner's trial counsel failed to investigate or call witnesses at the trial of the petitioner.

Respondent argues Petitioner is not entitled to habeas corpus relief because the state PCR court's decision was not contrary to or an unreasonable application of clearly established law.

## LEGAL STANDARDS

Under 28 U.S.C. § 2254(d)(1), habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v.*

8 - OPINION AND ORDER -

*Andrade*, 538 U.S. 63, 73 (2003). A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the ... case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Williams*, 529 U.S. at 413), *cert. denied*, 546 U.S. 963 (2005). "'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert*, 393 F.3d at 974.

In conducting a review under § 2254, this Court must look to the last reasoned state-court decision. *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) (citing *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002)), *cert. denied*, 541 U.S. 1037 (2004). When the state court does not issue an opinion or otherwise supply the reasoning for a decision, federal habeas review is not *de novo*. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Lockyer*, 538 U.S. at 75-76. Instead, this court considers whether the state decision

9 - OPINION AND ORDER -

was "objectively reasonable" after conducting an independent review of the record. *Id*.

The Supreme Court has established a two-part test to determine whether a defendant has received ineffective assistance of counsel. Under this test, a petitioner must prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-888 (1987).

To prove a deficient performance of counsel, a petitioner must demonstrate that trial counsel "made errors that a reasonably competent attorney as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985). The test is whether the assistance was reasonably effective under the circumstances, and judicial scrutiny must be highly deferential, with the court indulging a presumption that the attorney's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

To establish the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In determining whether a defendant was prejudiced by

10 - OPINION AND ORDER -

ineffective assistance of counsel, the court should examine whether the "'result of the proceeding was fundamentally unfair or unreliable.'" *United States v. Palomba*, 31 F.3d 1456, 1460-61 (9th Cir. 1994) (*quoting Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)).

## DISCUSSION

Petitioner alleges he received ineffective assistant of counsel when his trial attorney failed to investigate or to call four witnesses to testify at trial: Kathy Fitzwater, Starrie Underwood, Mark Dodge, and Dianna Donofrio. Petitioner further asserts that the PCR trial judge erred in excluding the testimony of these witnesses in the PCR proceeding.

At the PCR trial, Petitioner's attorney explained that several witnesses he planned to call would testify about statements Petitioner's daughter made about not wanting to go to California because her mother would keep her there. The PCR judge cautioned that he was not there to re-try the case and advised that he did not see anything relevant in their proposed testimony. However, the judge allowed Petitioner to make an offer of proof after which the judge could determine whether the testimony was relevant.

In the offer of proof, Kathy Fitzwater, Petitioner's sister, testified Petitioner's daughter told her she did not want to go to

11 - OPINION AND ORDER -

California because her mother would not allow her to return to Oregon.  Starrie Underwood, a friend of Petitioner's, testified she heard Petitioner's daughter tell some other children she did not want to go to California because she knew her mother would keep her there.  Mark Dodge, another friend of Petitioner's, testified to hearing Petitioner's daughter say the same thing.  Petitioner's fiancee, Dianna Donofrio, testified about similar statements from Petitioner's daughter.

After hearing the offer of proof, the PCR trial judge determined it was not relevant.  The judge went on to ask Petitioner about the criminal trial judge's questioning him about the defense resting without calling Petitioner or any other witnesses to testify.  Petitioner explained that he agreed with trial counsel because was placing his trust in that lawyer's assurances that he would not be convicted on the evidence before the court.

The PCR trial judge denied relief.  He entered a three-page general judgment noting that Petitioner had failed to prove "each and every allegation of the Petition."  Resp. Exh. 113, p. 1.  The judge also noted that Petitioner "expressed his approval of not testifying himself or calling witnesses in court when questioned by the judge."  *Id.* at p. 2.

Petitioner's theory at the underlying trial was that the victim's motive in making the allegations against her father was

12 - OPINION AND ORDER -

so she could remain in California with her mother. Petitioner himself relayed this belief in his statements to the police, as did Petitioner's fiancee, Dianna Donofrio. At trial, the victim testified consistently with the defense theory, stating that she told her babysitter about Petitioner's behavior "[c]ause I didn't want to go back up [to Oregon]." Resp. Exh. 103, p. 50. Petitioner's attorney pursued the defense theory on cross-examining the victim, depicting life more enjoyable in California than Oregon. Even the trial judge noted, in discussing the defense theory, that there was "some evidence that [the victim] was perhaps motivated in some way to want to stay with her mother in California as opposed to coming back to Oregon for the next school year." *Id*. at p. 129.

As noted, the testimony proffered at the PCR hearing contradicted this theory; the four witnesses all said the victim had expressed her desire <u>not</u> to return to California, because she did not think her mother would let her come back to Oregon. Petitioner argues trial counsel was ineffective in failing to call these witnesses because their testimony would have undermined the victim's credibility in that a fact-finder would expect a child who had been abused to wish to stay away from her abuser.

This Court disagrees. Given the evidence presented at trial, Petitioner cannot establish there is a reasonable probability that the result of the proceedings would have been different had trial

 13 - OPINION AND ORDER -

counsel called the four witnesses to testify as to the victim's alleged statements she did not want to go to California. The victim described the abusive behavior in the video-tape interview and again at trial. The police officers testified that Petitioner admitted he placed his daughter's hand on his penis and that he did so for the purpose of sexual gratification. In light of this evidence, the Court finds there is not a reasonable probability the outcome would have been different.[1] As such, the PCR trial judge's decision denying relief is not contrary to or an unreasonable application of clearly established law and Petitioner is not entitled to habeas corpus relief.

## CONCLUSION

For these reasons, the Court **DENIES** the Petition for Writ of Habeas Corpus.

The Court **DENIES** a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 30th day of December, 2010.

---

[1] To the extent Petitioner presents "other trial lapses" to support his ineffective assistance counsel claims, his argument is without merit as those claims were not raised in the state PCR proceeding and were not raised in his Petition for Writ of Habeas Corpus in this Court.

14 - OPINION AND ORDER -

        <u>/s/ Anna J. Brown</u>
        ANNA J. BROWN
        United States District Judge